BOLYN B. BARCLAY, APPELLANT, VS. JOSEPH T. RUSS, APPELLEE.

Where the consideration of a note is Confederate notes, and it was made during the war, the measure of damages is the value of the notes at the time of the formation of the contract, and not when the note falls due. If the parties at the time fixed their value, that should control. The several decisions upon this subject reviewed and construed.

Appeal from the First Judicial Circuit for Jackson county. The opinion of the Court contains a statement of the case.

*J. F. McClellan,* (with whom was *C. C. Yonge,*) for Appellant.

*C. C. Yonge* for Appellant.

The rule for estimating damages for non-payment of promissory notes, payable in a depreciated currency, seems to be well settled to be the value of the currency at the time of the breach of the contract, to wit, at the maturity of the note. See Sedgwick on Damages, 5th Ed., 269, 270.

It is claimed that in this case the rule is not applicable, because of the operation of Ordinance No. 8 of the constitutional convention of 1865, which provides, "That in all

Barclay v. Russ.

proceedings of Courts of this State founded upon a contract or contracts made and entered into during the late war, between the United States and the Confederate States, the Courts are hereby authorized to admit testimony as to the value of the property or consideration contemplated by the parties to said contracts, and to instruct the jury to find accordingly, provided the defendant shall allege by plea under oath and prove to the satisfaction of the jury, that . the currency contemplated in the payment of said contract was Confederate or State Treasury notes, or upon what basis the consideration as to the value of the property, or its use, . which was estimated at the time of the formation of said contract."

Two questions are presented for determination. 1st. Does the language employed show any purpose to change the rule of damages above alluded to ?   2d. Is the ordinance, No. 8, of the Constitutional Convention of 1865, in force ?

1st. The object of the Ordinance was to relieve parties who had given obligations payable in "dollars" during a period of great inflation of a depreciated currency, and to enable them to discharge such obligations by the payment of such sums as the jury should find upon hearing the evidence as to "the value of the property or consideration contemplated." The Court is authorized, not required, to instruct the jury, after hearing the evidence as to the "value of the property or consideration contemplated," "to find accordingly."

We submit that this does not require the jury to find the value of the consideration contemplated at any specific time, either at the date of the contract or at its breach, and being silent on this point, the rule remains as it was before the adoption of the Ordinance, which, as already stated, seems to be at date of the breach of the contract.   It is very apparent from the evidence that the jury estimated the damages according to the value of Confederate money at

the date of the breach of the contract, as they were instructed to do by the Court.

2d. Was the Ordinance of 1865 in force at the time? 1st. It was not operative, because the convention by which it was adopted was not called into existence in the manner required by the laws and constitution of the State then in force, and the said convention has not been recognized as a legal and constitutional body either by the State or the United States, but on the contrary has been ignored by both.

2d. If that convention were a legal and constitutional body, its duty was to frame organic and fundamental laws for the government of the State, and had no authority to enter into the details of legislation as this ordinance manifestly does.

3d. If the said ordinance be regarded as organic in its character, and therefore a proper and appropriate exercise of power by the convention, then it ceased to exist when the constitution of which it was a part was superceded by the constitution of 1868, unless adopted by that constitution, and it was not so adopted as we shall presently see.

4th. The 1st section of 15th article of the constitution of 1868 provides, "That all ordinances and resolutions heretofore passed by any convention, and all acts and resolutions of the Legislature conflicting or inconsistent with the Constitution of the United States, and the statutes thereof, and with this constitution, and in derogation of the existence or position of this State as one of the States of the United States of America, are hereby declared null and void, and of no effect."

The first sentence of this section would seem to dispose of the whole question by the annulment of the ordinance.— The only question then is, whether the first sentence is intended to be qualified by what follows.

The punctuation would seem to indicate that it is not intended to be. The remainder of the section is applicable

Barclay v. Russ.

to a certain class of acts and resolutions of the Legislature, to wit, those in conflict with the Constitution of the United States and its statutes, and with the State Constitution of 1868.

The next section of the article is devoted to the remaining class of statutes and resolutions of the Legislature, that are not in conflict with the Constitution of the United States and its laws and the constitution of 1868, and declares them to be in force, but is entirely silent as to the ordinances of conventions, and doubtless for the reason that all these ordinances were already annulled by the first clause of the first section.

But if this view of the subject admits of doubt, then the 25th section of the 16th article of the same constitution declares all notes and other evidences of debt given for Confederate State notes void and that no action shall be maintained thereon.

Now Ordinance No. 8, of 1865, is clearly "conflicting and inconsistent" with the 26th section of article 16th. The one recognizes the validity of such contracts and prescribes rules of evidence to be observed in actions upon them, and the other declares them void, and prohibits the Courts from entertaining actions on them.

It is true that the 26th section of article 16th has been declared to be in conflict with the Constitution of the United States in impairing the obligations of contracts, and to that extent and for that purpose is void. It is not void, however, as a declaration of the sovereign will of the convention, except as its effect and results are limited by the above referred to provision of the Constitution of the United States, and the will of the convention thus declared is "conflicting and inconsistent" with the ordinance of the convention of 1865, and therefore annuls it.

The following conclusions seem, then, to be legitimate and reasonable :

1st. That the 8th ordinance of the Constitution of 1865

did not fix the time for estimating damages for breach of contracts for Confederate money, either at the date of the breach, or the date of the contract, and whatever rule prevailed before that ordinance, remained unchanged.

2d. That the ordinance of 1865 was not in force at the date of the judgment in said case, December, 1873. 1st. Because it was not adopted by a convention having the power and authority so to do. 2d. Because it was expressly annulled by the first clause of the 1st section of article 15. 3d. Because it is conflicting and inconsistent with the 26th section of article 16 of the constitution of 1868, which, though void for some purposes, is not void as the declaration of the will of the convention, and being in conflict, said ordinance must be held to be inoperative.

*Geo. S. Hawkins* for Appellee.

The question for the consideration of the court is, whether the value of the Confederate notes should have been determined and assessed by the jury at the date of the note, or when it became due and payable.

The first of these propositions is assumed with great confidence, inasmuch as there have been two decisions of this court upon the subject, deciding that the value of the Confederate money is to be calculated at the date of the note, or the time when the contract was entered into. I refer to Randall vs. Pettus, 12 Fla., 532; Forcheimer vs. Holly, 14 ib. 239.

In the latter case, the court adopts the reasoning and follows the decision of Thorrington vs. Smith in the Supreme Court of the United States. 8 Wal., 1. In that case the court declare, " We are clearly of opinion that such evidence" (evidence in relation to the value of Confederate currency,) " must be received in respect to such contracts in order that justice may be done between the parties, and that the party entitled to be paid in these Confederate dollars

can recover their actual value at the time and place of the contract in lawful money of the United States."

It is contended that the Ordinance of 1865 as to Confederate currency is not in force now, nor was so at the date of the decisions of this court cited above. Be this as it may, it seems at least to have been temporarily adopted as a fair mode of adjusting the questions as to Confederate money. Randall vs. Pettus, and Forcheimer vs. Holly, certainly decided them irrespective of the ordinance, though cited in both cases. Its equity, in conjunction with the fact of its being a strong expression of legislative opinion, unquestionably commended it strongly to the favorable consideration of the court.

If the ordinance is not in force, then we have no legislation upon the subject, and if the question were res integra, the principles as established by the court would still remain, based as they are upon justice and equity, and sustained as they are by the Supreme Court of the United States in Thorrington vs. Smith, and a recent case in quatuor pedibus with the one at bar. The moment it is admitted that these Confederate contracts are legal, then the law should govern as in other contracts, and no matter in what light Confederate notes are regarded, whether as choses in action, chattels, or anything else of a personal character, their value can be ascertained only by relation to the time of the creation of the contract—there should be the restitutio ad integrum, and regarding Confederate notes merely as property, the party obtaining it should answer for the value it bore at the time of its receipt or delivery.

The moment we depart from the above principles and attempt to subvert the decisions of the court upon this subject, the following argument might arise and be urged with much force, viz : That when a note is payable in dollars, (which mean coin or legal currency,) though the consideration was Confederate notes, and the note does not express upon its face that it is to be paid in that currency, is not the payee

of the note entitled to recover its face value in lawful money ?
Could the written contract be varied by parol evidence ?
Under these circumstances, to establish a value by any other
standard than that afforded by the contract itself, most cer-
tainly justifies the court in its opinion in Forcheimer vs.
Holly, when it remarks that "it (the ordinance,) in effect
destroyed the contract of the parties and made a new one."
So too in 2 Cranch, 10; a case wherein the legislation of
Virginia as to scaling the value of the money of that State
during the Revolution to its intrinsic value was considered,
Chief Justice Marshall observes, " The legislature was per-
forming a very extraordinary act. It was interfering in the
mass of contracts entered into between the first of January,
1777, and the last of January, 1782, and ascertaining the
value of these contracts by a rule different from that which
had been adopted by the parties themselves."

WESTCOTT, J., delivered the opinion of the Court.

Russ, the payee, brings an action of assumpsit against
Barclay, one of the makers of the following joint and several
promisory note :

    " $3,300.

    " On the first day of January, eighteen hundred and sixty-
four, we or either of us promise to pay Joseph T. Russ, or
bearer, the sum of three thousand three hundred dollars for
value received, with eight per cent. interest from date.—
December 27, 1862.

                              " JAMES W. McKINNIE,
                              " BOLYN B. BARCLAY."

The defendant pleads, first, non assumpsit ; second, that
the note was made during the late war, and that the cur-
rency contemplated was Confederate notes; and, third,
illegality of consideration in that these notes of the Confed-
erate States were issued in aid of the rebellion. The plain-
tiff joined issue on the first and second pleas, and filed a

replication to the third. What this replication was it is unnecessary to state, as the determination of the errors here assigned does not involve its consideration.

It was admitted that the consideration of the note was Confederate notes, and the court charged the jury that the measure of damages was the gold value of the consideration at the time the contract was made. To this charge the defendant excepted, insisting that the measure of damages was the value of Confederate notes at the time fixed for payment, or when the note became due.

There was a verdict and judgment for the plaintiff in conformity to these instructions. From this judgment this appeal is prosecuted.

The question presented for our consideration under the pleadings and errors here assigned is, whether the value of the Confederate notes at the time of the execution of the note is not the measure of damages, and not their value at the date the note became due.

It is insisted that this contract is not embraced in the ordinance entitled "An ordinance in reference to contracts made during the late war;" that the note here sued upon was payable in Confederate notes, and that the value of such notes at the time the note became due is the measure of damages, the case being assimilated to the case of a contract payable in the paper of a particular bank or company.

Does the ordinance embrace this case?

The ordinance is as follows :

"Be it ordained, &c., That in all proceedings in the courts of this State founded upon a contract or contracts made and entered into during the late war between the United States and the late Confederate States, the courts are hereby authorized to admit testimony as to the value of the property or consideration contemplated by the parties to said contracts, and to instruct the jury to find accordingly, provided that the defendant shall allege by plea under oath and prove to the satisfaction of the jury that the currency

contemplated in the payment of said contract or contracts was Confederate or State treasury notes, or upon what basis the consideration or the value of the property or its use which was estimated at the time of the formation of said contract."

This note was made during the time embraced in the ordinance; defendant admits by his pleadings that it was payable in Confederate notes, and that the consideration was Confederate notes; but.it is insisted that the sentence " or upon what basis the consideration or the value of the property or its use which was estimated at the time of the formation of said contract," limits the application of the ordinance to those cases only in which there was an actual estimate of the value of the consideration at the time the contract was entered into. The effect of these words is not generally restrictive of the whole ordinance. It is an alternative clause, under which provision is made for a class of cases in which the consideration was not Confederate notes, but other property, and the effect of the ordinance is to permit the application of a rule of equity and to reduce the amount agreed to be paid to the acutual value of the consideration when the basis upon which the value of the consideration was estimated, or the value of the property which was the subject of the contract was determined was Confederate notes; in other words, when the standard of value in the minds of the parties was Confederate notes.

It was the object of the convention to prevent the recovery of the nominal amount of dollars due in such contracts and to assure the recovery of the actual value of what had passed between the parties. To prevent on the one hand the recovery of the nominal amount of dollars, and on the other to affirm the legality of the consideration in such contracts, as well as to secure an equitable adjustment by returning the value of the notes or property which had been parted with. The validity of this ordinance, though discussed by one of the counsel, is not presented for our con-

sideration by the pleadings or the errors assigned, nor do we regard it as an open question. The interpretation of this particular alternative sentence, couched in to say the least very inacurate language, has never been settled by this court in a case where the consideration was Confederate notes. The positions taken by the appellant are based upon his construction of it, and we cannot say with the respondent that the appeal is frivolous when one of the questions involved is the construction of this alternative sentence in an ordinance of such importance and relating to a class of contracts which are very many in number, as well as varied in nature. This contract being embraced in the ordinance, the measure of damages is the value of the consideration at the time of the "formation" of the contract. This is the rule which this court has already announced in such cases. The case of Fife vs. Turner, 11 Fla., was a case in which a note was given for legal services rendered. The note in that case was given for dollars and the value of the service was fixed in Confederate notes. This court decided that the measure of damages in such a case was *the value of the service rendered*, and that it was not the *value of the Confederate notes promised to be paid*, unless that value was estimated and agreed upon by the parties as the basis of their contract. In other words, that there was no valuation of Confederate notes to be made in such a case, unless the parties themselves estimated their value when making the contract, and made the contract upon the basis of that estimate.

The case of Randall vs. Pettes, 12 Fla., was an action upon two promissory notes. The consideration was Confederate notes, as in this case. The rule applied in the Circuit Court was their value at the date of the note. This ruling was made the subject of exception. The question was brought to this court, and we there determined that this rule was correct. In principle there is no difference between that case and this.

The judgment is affirmed.